First matter is Jose Morales Gonzalez v. Mukasey. Good morning, your honors. Richard Mendez for petitioners. Good morning, Mr. Mendez. Good morning. Good morning. Good morning, sirs. May I please the court? What? May I please the court, shall I? Oh, yeah. Your honors, we're here today based on the issues of a motion to reopen was denied to my clients after they filed with the BIA from a denial of their cancellation removal application. Specifically, we're talking about Jose Ines Morales, who entered the United States from Mexico, entered in the early 1990s. Since then, had three United States children. Well, how's Cynthia Palacio doing? She's doing just fine. She finally became a citizen, but she became a citizen, actually, March of 2007. She is the stepdaughter of the female. But why don't, why don't, why, I found out about this myself. Why didn't, why weren't we told about this? I mean, she's, she's, she's been a citizen now for what, a year and three or four months? Huh? Correct. And did she apply for a, file an I-130 for her father? She did not file an I-130. Why not? Can't really ask. Well, you're her lawyer, aren't you? Yes, Your Honor. So you dropped the ball. Well, we, we. I mean, you dropped the ball, didn't you? I would, I wouldn't care. I don't know if I dropped the ball. We, the clients came in. We consulted with them. They were made aware. I mean, we can't, you know, force our clients to file an I-130. I mean, we did, we did consult them. No. We did, we did mention to them. Well, when, when did you find out, when did you find out that, that, I mean, her certificate number is 30680365. And she became a United States citizen on 6-22-2007. There's no evidence. We found out shortly thereafter. I guess the problem was that Ms. Morales and her husband were sort of caught in a pickle because if they were to file the I-130 and their petition wasn't approved by the grandfathering clause, then they would have to leave the country. And so they wanted to waive the decision, the outcome of this, of this, of this, of this court. What do you mean by grandfathering clause? Well, the way that they would be eligible would be the grandfathering petition from the sister of the, of the female petitioner. So, so there was an issue as to, as to their, because they entered without inspection and, and we have not been able to actually to produce the. Well, she's a citizen, isn't she? Correct, Your Honor. Okay. So why couldn't she have, why couldn't she have filed an I-130 for her father? She, she could have. The problem was her, her legal entry. There was an issue as to her legal entry. And so she might not have been protected by the 245i statute. And the I-130 initially was. So you're saying that her citizenship is in doubt? No, Your Honor. I was, I'm saying that the, that the, that they didn't file before April 1st, 2001. So they would have potentially had to have departed the country. So you're saying if she files a petition now, they have to leave the country and come back? Yes. Well, not if it's reopened. Huh? Let me just hear from the government, because I'd like to figure out what's going on. I mean, my worry here, too, is that this doesn't seem to be the only thing that we forgot to file or didn't file. There was a decision by the BIA, the original decision, for which you moved for reconsideration, which wasn't done right. You didn't appeal the decision. You didn't do what you needed to do. It had to be filed within 30 days, and it wasn't. It wasn't. That's right. So, therefore, we're kind of lost on that. So there's only, the only thing we've got in front of us is a motion to reopen. And now you're telling my colleague the lady became a citizen and she didn't do anything under I-130 to help? And that's the only reason that there would have been any reason for us to do something? Well, as to the first point, yeah, of course, the motion to reconsider is to be done within 30 days. And the motion to reopen was to be filed within 90 days, which we did do. As far as her decision not to file at the end, she was sort of afraid that if she falls on I-130, she'll have to leave the country to do consular processing and abandon everything. But who would have to leave the country? The Petitioners. That was her fear. You said that she would have to leave the country. Correct. Well, that was her impression. That's what she believed. And so I don't have that. Is that the legal advice you gave her? No. I told her that we need to exhaust the legal remedies here to see if this case can be overturned or remanded back to the Board because we were denied a continuance. But if she departs while the case is pending, then she has this abandonment. Let me ask Mr. Fiorina what we need to do to straighten this out. Sure. Okay. Good morning, members of the Court. I'm Paul Fiorina for the Respondent. Judge Smith, you're absolutely right. The only issue before the Court is whether the Board abused its discretion in denying the motion to reopen. I'm asking you what do we have to do to straighten this out? Unfortunately, Your Honor, there's nothing that the Court can do at this point. What do you mean? Because the Petitioner has not filed an I-130 to adjust her status. And due to the Petitioner's failure to depart voluntarily under the order of removal, they had a period of voluntary departure. They failed to depart voluntarily during that period. And therefore, they're ineligible for a period of 10 years to adjust their status. And that's under the provisions of INA 240B-D1B. So at this point, there's really nothing that the Court can do. Well, can't we – can't you agree with counsel to reopen this matter? No, Your Honor. Before the BIA, we just had another case where that was done. It would be essentially futile, Your Honor, because there's nothing statutorily – there's nothing that the BIA, that the Department of Homeland Security, or even this Court can do. She's statutorily ineligible. Well, what if we find that there's been ineffective assistance of counsel here? Well, that's not been raised in the Petition. That's a constitutional issue. That's not been raised in the Petition for Review. Well, I'm raising it now. And it's not before the Court. Because the only issue – I'm raising it now. It's a constitutional issue. The only issue before the Court is whether the Board abused its discretion in denying the motion to reopen and reconsider. That's the basis of the Petition for Review. And the Board held – Well, we had – I think we got it – either did it yesterday or coming up today. We've had cases where a motion to reopen was denied and the party was ready to file the I-130. And both the government and the counsel for the petitioner stipulated that it could be reopened. And then the visa was issued and the people were taken care of. You see, we've got a family here. You've got three kids born in the United States of America. And they're working. They're buying a house. Isn't that right? And they want to kick them out of the country. Well, unfortunately, Your Honor, we also have the statute, which makes them eligible. We also got some rules that you haven't followed either. You know, we're going to take that up. I think you're the same guy in the other case. You know, I'll surprise you with that too. So we have to have a little flexibility here. Well, I understand, Your Honor, that you – you know, it's unfortunate. But the way this case is postured right now, the petition for review was filed from the board's decision. Ineffective assistance of counsel was not presented to the board. Okay, so you can't offer any help at all. Unfortunately, statutorily, we can't, Your Honor. Okay, but that's – is this what you do for a living? You handle these immigration matters? I represent the United States, Your Honor. Well, I mean, you handle these immigration matters. Yes, Your Honor. Okay, you're an expert on it. I represent the United States Attorney General. Is that it? You're not an expert? I defend cases of the Board of Immigration Appeals, and I argue the statutes and the law for this court. All right, fine. If it was within the government's power to do something, we would. But unfortunately, the way this case is postured and under the jurisdiction of the court, there's nothing that can be done. And that's unfortunate, but that's the law as it stands, Your Honor. As you see things, how should things have been done? Well, if the petitioner had filed a petition from review from the first board decision, they would have preserved the issue of the continuance. And if the most important thing is – And that's when he missed the 30-day deadline. Yes. The most important thing is that the petitioners themselves would have had to either voluntarily depart within the 30 days granted by the board or file a motion to reopen within that 30-day period, which they did not do. And because of that, there's nothing that can be done. So the daughter now can't get an I-130 for them because they didn't remove themselves? They didn't voluntarily depart within 30 days. Within 30 days of September the 1st of 2004, when the voluntary departure was allowed? Yes, Your Honor. And they didn't file any motion to reopen either? They did file a motion to reopen, but as the – the one before the – they did, and as the board stated in its decision, they weren't prima facie eligible for the relief sought. Because at that point in time, though, the daughter hadn't become a citizen, correct? She hadn't become a citizen and there was no I-130. And she was still waiting for an interview or something like that? She didn't have a visa presently available, correct, Your Honor? Well, she passed her test on what day? I don't – I'm not aware, Your Honor. I'll tell you, you know. She passed her test on March the 18th, 2005. Let me ask you a question, counsel. It's of some concern to me that the only thing that was said in the BIA's decision on the motion to reopen was, we do not find that the evidence submitted in support of the motion to reopen establishes prima facie eligibility for any relief from removal. As I read Rodriguez-Larise, I've got to have a little more basis than that. So why in the devil should we suggest that what the BIA did in that instance was correct? Because – I mean, they didn't even tell me why. Well, if we look at the record, we can see why. Because in order for her to – What do you mean? I don't have to look at the record under Rodriguez-Larise. If you read Rodriguez-Larise, as I've read it, it says you have to give the basis for what you did. Now, there was certainly more information which was presented on the motion to reopen. They didn't even discuss the extra information. All they did was make a one-liner, prima facie eligibility not established. Now, what in the devil does some poor person who's coming to this court have any idea of what it is that they're skidding from the BIA with that when they've got Rodriguez-Larise, a 2002 case, sitting right on the books? I mean, what could I get out of it? They came in and gave him more information to the BIA. There's no question about that. There's cases that say that information, even though known, before the BIA was appealed to, was not in the petition, didn't go back to the IHA, so it is new information. Why didn't they say, okay, this is why we're not doing it? Why is this one-liner enough when I have Rodriguez-Larise hitting me square in the face as to what I'm supposed to do? Well, let's assume for the sake of argument, Your Honor, that the one-liner that you reference is not enough. We would contend, however, that any error would be harmless because the petitioners were, in fact, not eligible. It would have been nice, it would have been convenient, it would have been instructive if the Board had discussed it more. But the fact of the matter is, underlying all of that, they were not eligible. And at this point … of the incompetent, you know. Go ahead. That being the case, Your Honor, at this point, there is nothing that an immigration judge or the Board or even this Court can do. It's the statute that's the problem. And we would say that they've never been eligible to adjust, and due to their failure to depart voluntarily, they have essentially foreclosed the opportunity, save for returning to their native country and waiting, getting back in line. And it's unfortunate because it's the law. Subject to your questions? Even if you grant the relief that the petitioners request, are you saying they still lose? No. That's correct, Your Honor. Why is that? Tell me that again. Because under Immigration and Nationality Act Section 240BD1B, their failure to comply with a voluntary departure order makes them ineligible to adjust status for a period of 10 years. INA 240BD1B. Were they told that? I believe they were. I can't be 100 percent sure, but the procedure is that they should be informed about that. Who told them? The immigration judge. When the immigration judge and or the board. What? When the immigration judge or the board issues the voluntary departure order, it's my understanding that they will inform the petitioners that their failure to depart voluntarily was subject them to this penalty. Well, do you have any record of that? Is that in the record?  I didn't see that. Did you see it in the record? I didn't look for it, Your Honor, because that issue wasn't brought up in the brief. It wasn't raised to the court. Well, that's because we got ineffective assistance of counsel here, too. Well, that issue also wasn't brought up before the court. Do you think a guy's going to raise that issue on himself? But by the same token, we don't respond to arguments that aren't presented to us. Well, if you want to look through your record and find it, let us know. If there's anything there that shows that these people were told if they didn't leave within 30 days that, you know, the Iron Curtain had come down and they would have to remain out of the country for 10 years, you know, with their three kids born in this country, you know, what's the wife status at the time? What's the wife status at the time? At what time? Huh? I'm not clear at what time you're talking about, Your Honor. At the time this hearing took place. She entered here legally, and she was applying for cancellation of removal. She had no legal status. She had no legal status? No. She was not a legal permanent resident? No. I see. And her hope was an adult daughter who would marry an American citizen. Yes. So will you see if you can find where they were told that if you don't leave within 30 days, you can't do anything for 10 years? Yes, Your Honor. Unfortunately, I don't have the record with me in court today. I'll have to do it after. When you get back to Washington, you can look for it. Okay. Will you let us know within 10 days? Yes, Your Honor. All right. Thank you. So you want to say anything else, Mr. Mendez? Yes, Your Honor. Your Honor, we respectfully disagree with government counsel. And if this Court does have the authority, there is relief available. If this Court overturns the denial, the board's denial of the motion to reopen, then that would rescind the deportation, and the 10-year bar wouldn't kick in. And the reason for delays weren't essentially from the petitioners. They were from the services. I wouldn't say refusal, but because of their backlogs and their delays in approving citizenship, it directly affected the outcome of her mother's form of relief. So essentially, our hands were tied while the immigration service is supposed to process their paperwork, and the judge refused a reasonable request for a continuance, which would have dramatically affected the outcome of the case. But the reasonable request for continuance is gone because nobody filed within a particular time to get it in front of us. We only have a motion to reopen in front of us. I mean, how do I get around the statute? It's pretty clear. You've got to do it in 30 days. If you don't do it in 30 days, no way for me to sit here. Well, the statute, I mean, are we talking about the motion to reconsider? Oh, no. Yes, we are. The motion to reconsider is 30 days. We filed a motion to reopen, and it was within the statutory period. So the only thing we have is the motion to reopen. Correct, but that could be overturned by this Court. Well, I understand it can be overturned. But, in effect, your clients also had a chance to do something to rectify this, counsel is saying. If they didn't left within 30 days after being granted voluntary departure, they could have been staying. And as I understand what the IJ said, that all of the Gonzalez family has lived in Mexico. Some of the Morales family lived and were employed there. Both had good jobs previously there. The children seemed to adapt to life there. They had plenty of money to do it, and they were granted voluntary departure. So even given all of the things that could have happened for them to come back to this country, they could have departed. And then when she got her citizenship, she could have filed the papers, and they would be automatically in. Isn't that correct? Isn't that correct? Well, not automatically, because then once they depart the country, they're subject to a 10-year bar for unlawful presence. So it's sort of a catch-22. The deportation 10-year bar kicks in when they don't depart. But once they depart, then they get caught for an unlawful presence penalty, regardless of the deportation.  Not to mention that they established a life here. They have no crimes here. People have good moral character, and they're paying taxes. And they're being severely penalized. What's your excuse for not taking the timely appeal from the BIA for 30 days? I did discuss it with my clients. We had some discussions. I don't want to say anything that prejudices my clients, although maybe my actions were in a failure. What I'm saying is, Your Honor, I did discuss with them, and I did counsel them. And if they didn't return to my office to go forward to give me the green light, what options do I have? I do the best we can under the circumstances. But, Your Honor, there is relief. I mean, we're still here. They haven't departed. There's still something that can be done. I disagree with counsel that their hands are tied and that they're barred. This case is remanded. Well, how are you going to get around the 245 statute that he suggested? I mean, I looked through that to try to determine. I can't find how he's wrong. How are you going to get around that? We're going to have to demonstrate that an I-130 was filed by her sister before that 2001 deadline. That isn't in our record. That isn't in our record. It's in the transcript. You're right. The document wasn't produced, but it's in the transcript based on Petitioner's testimony. Well, what are you saying about the sister and the I-130? When was that filed? It was filed before April 30, 2001, but I have yet to do that. I don't have the actual copy of the I-130 approval from the sister before. So they would be eligible for 245I. You don't have the actual copy of what? Of the I-130 that was filed on behalf of Petitioner's sister. She's a U.S. citizen's sister, and she filed a founding petition for Petitioner before that 245I sunset date. Well, she did file it, huh? Well, we're talking about somebody else other than that's in this record. Well, look, the government's going to let us know if these folks were cautioned about that 30-day period of departure. So why don't you file a declaration with us or a brief with us setting out your theory right now that you've been talking about here? Who filed the I-130? Petitioner's United States citizen's sister. Why don't you give me names? I don't know her name offhand. Petitioner is Isabel Morales, her sister. Oh, it's not Cynthia Palacios? Huh? No, you're on. No, Cynthia Palacios is her daughter. Is her daughter. We were waiting for her to become a citizen when we were arguing this case before the immigration judge. So who filed the I-130? Well, they both did. Well, give me names. Mrs. Morales's sister, U.S. citizen's sister, filed an I-130 before April 30th, 2001. After they were placed in removal proceedings, Cynthia Palacios, which was a Leopold resident at the time, was attempting to naturalize. And she eventually filed an I, excuse me, she became a citizen and is now eligible to petition her mother. Why didn't the sister's petition work that she filed? It didn't work because the backlog of the visas are incredibly long or delays. It takes like 12, 14 years before the visa's available through a U.S. citizen sibling. Sibling takes a longer time. Sibling takes longer, but a daughter, that moves quickly. Yes, correct. It's immediate. It's quicker. Thank you, Your Honors. Thank you. Can I address the Court briefly? Sure. I have a question I think I'm allowed to answer, please. What'd you say? Yeah, come on, yeah. On page 30 of the record is the last page of the Board decision that says, if the alien fails to depart the United States within the time period specified or any extensions granted by DHS, the alien shall be subject to a civil penalty and shall be ineligible for a period of 10 years for any further relief under Section 240B. Where is that? It's on page 30 of the record. Page 30 of the record. Page 30 of the record. Thank you. And that was said to him, was it? It was in the Board decision. It was issued to him, Your Honor. It was in the Board decision? Yes. So, Mr. Mendez, your clients were notified of this critical 30-day period, huh? I mean, they were definitely consulted and advised otherwise to file motions to consider and, as a consequence, yes. I don't know if they understood, but it was explained to them. Although, when you're sitting there in the proceedings and the judge and the interpreter and everything's going on, and that small print at the end, I mean, I definitely brought it to their attention. I was going to say you read it, didn't you? You'd bring it to their attention, wouldn't you? Certainly, Your Honor. They speak English? A little bit of English. I mean, they speak some English, yes. I mean, primarily Spanish. That's their primary language. They've been here for many years. Was it explained to them in Spanish? We speak in Spanish, yes.  What did you say? I communicate with my clients in Spanish. So you told them all this in Spanish, huh? Yes. Okay. The matter will stand submitted. Shall we go to the next one here? CUPEC. What? CUPEC. We'll put this at the end of the calendar. I have a note here that Mr. Markman will be here in about two hours. So you're on this case, Mr. Fiorino? Yes, Your Honor. Okay. We'll put it at the end of the calendar. Thank you.
judges: Pregerson, Smith, Collins